UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

TRUSTEES OF THE PLUMBERS LOCAL UNION NO. 1 WELFARE FUND, ADDITIONAL SECURITY BENEFIT FUND, VACATION & HOLIDAY FUND, TRADE EDUCATION FUND, 401(K) SAVINGS PLAN, TRUSTEES OF THE PLUMBERS AND PIPEFITTERS NATIONAL PENSION FUND, and TRUSTEES OF THE INTERNATIONAL TRAINING FUND,

         Plaintiffs,

  -against-

PREMIER PLUMBING & HEATING SPECIALISTS, INC.,

         Defendant.

20 CV _____

**COMPLAINT**

---

  Plaintiffs, by and through their attorneys, Virginia & Ambinder, LLP, as and for their Complaint, respectfully allege as follows:

## NATURE OF THE ACTION

  1. This is a civil action pursuant to, *inter alia*, sections 502(a)(3) and 515 of the Employee Retirement Income Security Act ("ERISA"), as amended, 29 U.S.C. §§ 1132(a)(3) and 1145, section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185, to recover delinquent employer contributions to a group of employee benefit plans, to recover delinquent contributions pursuant to a payment bond, to enforce an employer's contractual and statutory obligations to make specified monetary contributions to such plans, and for related relief.

## JURISDICTION AND VENUE

  2. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367 and 29 U.S.C. §§ 185 and 1132(e)(1).

  3. Venue is proper in this judicial district pursuant to 29 U.S.C. §§ 185 and 1132(e)(2).

- 1 -

## THE PARTIES

4. Plaintiffs Trustees of the Plumbers Local Union No. 1 Welfare Fund, Additional Security Benefit Fund, Vacation & Holiday Fund, Trade Education Fund, and 401(k) Savings Plan (collectively, the "Local 1 Funds") are employer and employee trustees of multiemployer labor-management trust funds organized and operated pursuant to various collective bargaining agreements in accordance with section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5).  The Local 1 Funds are employee benefit plans within the meaning of section 3(3) of ERISA, 29 U.S.C. § 1002(3).  The Funds maintain their principal place of business at 50 – 02 Fifth Street, Long Island City, New York 11101.

5. Plaintiff Plumbers Local Union No. 1 Welfare Fund (the "Welfare Fund") is the designated Collection Agent for Local Union No. 1 of the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada (the "Union") and the Plumbing Industry Promotion Fund of New York City.  The Union is, and at all relevant times was, a labor organization within the meaning of section 301 of the LMRA, 29 U.S.C. § 185.  The Union represents, and all relevant times represented, employees in an industry affecting commerce as defined in section 502 of the LMRA, 29 U.S.C. §§ 142.

6. Plaintiff Trustees of the Plumbers & Pipefitters National Pension Fund (the "NPF") are employer and employee trustees of a multiemployer employee pension benefit plan as those terms are defined in sections 3(2) and 3(37) of ERISA, 29 U.S.C. §§ 1002(2) and (37).  The NPF is established and maintained by a trust agreement between various employers within the plumbing industry and the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada.  The NPF is administered at 103 Oronoco Street, Alexandria, Virginia 22314.

7.	Plaintiff Trustees of the International Training Fund (the "ITF") are employee and employer trustees of a multiemployer employee welfare benefit plan as those terms are defined in sections 3(2) and 3(37) of ERISA, 29 U.S.C. §§ 1002(2) and (37).  The ITF is established and maintained by a trust agreement between various employers within the plumbing industry and the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada.  The ITF is administered at 103 Oronoco Street, Alexandria, Virginia 22314.

8.	Defendant Premier Plumbing & Heating Specialists, Inc. ("Premier") was and is a for-profit company organized and established under the laws of the State of New York duly authorized to conduct business in the City and State of New York as an employer within the meaning of sections 3(5) and 515 of ERISA, 29 U.S.C. §§ 602(5) and 1145, and was and is an employer in an industry affecting commerce within the meaning of section 301 of the Taft-Hartley Act, 29 U.S.C. § 185.  Upon information and belief, Premier maintains a principal place of business at 308 Jericho Turnpike, New Hyde Park, New York 11040.

## BACKGROUND

**The Collective Bargaining Agreement**

9.	At all relevant times, Premier was a party to, and/or manifested its intention to be bound by, collective bargaining agreements, project labor agreements and/or participation agreements with the Union (the "CBAs").

10.	The CBAs require Premier to make specified hourly contributions to the Funds in connection with all plumbing work and other specified wok performed on behalf of Premier within the five boroughs of the City of New York ("Covered Work").

11. The CBAs also require Premier to remit other specified amounts, including union dues withheld from its employees' pay in connection with Covered Work, to the Welfare Fund, as collection agent for the Union and other specified entities.

12. The CBAs further require Premier to furnish its books and payroll records when requested by the Funds for the purposes of conducting an audit to ensure compliance with required benefit fund contributions.

13. The CBAs provides, *inter alia*, "[t]he Employer agrees to be bound by the provisions of the Trust Agreements pertaining to the Pension (including the Plumbers and Pipefitters National Pension Fund), Plumbers Local Union No. 1 Welfare, Plumbers Local Union No. 1 vacation-Holiday, Plumbers Local Union No. 1 Supplemental Benefits, Plumbers Local Union No. 1 Trade Education, Plumbers Local Union No. 1 401(k) Savings Plan [funds]" (the "Trust Agreements").

14. The Trust Agreements permit the Funds to establish policies, rules and procedures for the purpose of collecting unpaid contributions to the Funds.  Pursuant thereto, the Funds adopted Policies for the Collection of Delinquent Fringe Benefit Contributions ("Collection Policies").

15. The CBAs and the Collection Policies adopted thereunder, require Premier to submit monthly remittance reports to the Funds detailing the number of hours of Covered Work performed by its employees.

16. Per the CBAs and the Local 1 Fund Collection Policy, employers are required to submit contributions and the supporting remittance reports by the twentieth (20th) day following the end of each calendar month.

17. Similarly, per the 401(k) Savings Plan Collection Policy, employers are required to remit 401(k) Salary Deferrals and the supporting remittance report within seven (7) business days

after the end of the payroll period from which the amounts were deducted from the wages of the employee.

18. Under the documents and instruments governing the Local 1 Funds, including their trust agreements and collection policies promulgated in accordance therewith, employers whose contributions are delinquent are liable for the amount of delinquent contributions, interest thereon at an annual rate of ten percent (10%), liquidated damages of twenty percent (20%) of the principal amount due, and attorneys' fees, audit fees, and other collection costs.

19. Under the documents and instruments governing the 401(k) Savings Plan, including their trust agreement and collection policies promulgated in accordance therewith, employers whose deferrals are delinquent are liable for the amount of the delinquency, plus interest at the rate of ten percent (10%) per annum, liquidated damages of twenty percent (20%) of the delinquency, and the greater of (a) lost earnings; or (b) restoration of profits, as defined by the Voluntary Fiduciary Correction Program ("VFCP") of the U.S. Department of Labor ("DOL"), 65 Fed. Reg. 14164 (March 15, 2000), which in no event shall be less than the underpayment rate defined in I.R.C. section 6621(a)(2), and which shall be determined by application of the DOL VFCP Online Calculator, and attorneys' fees and costs.

20. Under the documents and instruments governing the NPF, including their trust agreements and the collection policies promulgate in accordance therewith, employers whose contributions are delinquent are liable for the amount of delinquent contributions, interest thereon at an annual rate of twelve percent (12%), liquidated damages of ten percent (10%) of the principal amount due, and attorneys' fees, audits fees and other collection costs.

21. Under the documents and instruments governing the ITF, including their trust agreements and the collection policies promulgated in accordance therewith, employers whose contributions are delinquent are liable for the amount of delinquent contributions interest thereon

at an annual rate of twelve percent (12%), liquidated damages of twenty percent (20%) of the principal amount due, and attorneys' fees audit fees and other collection costs.

**Local 1 Fund Delinquencies**

    **Delinquent Reports and Contributions**

    22.    Premier failed to report the number of hours of Covered Work performed by each of its employees classified as journeymen for the period November 2019. Accordingly, Premier owes the Local 1 Funds contributions in an unknown amount for the period November 2019 but estimated to be at least $6,602.28.

    23.    Premier also failed to report the number of hours of Covered Work performed by its employees for the period December 2019 through January 2020. Accordingly, Premier owes an unknown amount of contributions to the Local 1 Funds for the period of December 2019 through January 2020, but estimated to be at least $18,521.38.

    **2015-16 Audit**

    24.    Pursuant to the CBA, the Local 1 Funds conducted an audit of Premier covering the period January 1, 2015 through December 31, 2016 (the "2015-16 Audit").

    25.    The 2015-16 Audit revealed that Premier failed to make required contributions to the Local 1 Funds in the principal amount of $3,543.53 for the period January 1, 2015 through December 31, 2016.

    26.    Despite due demand for payment, Premier has failed to pay any portion of the 2015-16 Audit.

    **401(k) Salary Deferrals**

    27.    Premier failed to submit remittance reports to the 401(k) Savings Plan for the period December 2, 2018 through January 12, 2020. Therefore, Premier owes 401(k) Salary in the estimated amount of $16,801.92 for the period December 2, 2018 through January 12, 2020.

**NPF/ITF Delinquencies**

**Delinquent Reports and Contributions**

28. Premier failed to report the number of hours of Covered Work performed by each of its employees classified as journeymen for the period November 2019. Accordingly, Premier owes the NPF and ITF contributions in an unknown amount for the period November 2019 but estimated to be at least $1,187.74 with respect to the NPF and $18.13 with respect to the ITF.

29. Premier also failed to report the number of hours of Covered Work performed by all groups of its employees for the period December 2019 through January 2020. Accordingly, Premier owes an unknown amount of contributions to the NPF and ITF for the period of December 2019 through January 2020 but estimated to be $3,679.48 with respect to the NPF and $76.26 with respect to the ITF.

30. Pursuant to the CBA, the documents and instruments governing the Funds and Section 502(g)(2) and 515 of ERISA, 29 U.S.C. §§ 1132(g)(2) and 1145, Section 302 of the LMRA, 29 U.S.C. § 185, J&A is liable: (1) to the Local 1 Funds for: (a) estimated contributions on behalf of employees classified as journeymen of $6,602.28 for the period November 2019, (b) estimated contributions on behalf of all groups of $18,521.38 for the period December 2019 through January 2020, (c) contributions of $3,543.53 pursuant to the 2015-16 Audit; (d) interest on the unpaid contributions at an annual rate of ten percent (10%), and (e) liquidated damages in the amount of twenty percent (20%) of the amount of delinquent contributions due and owing; (2) to the 401(k) Savings Plan (a) estimated 401(k) Salary Deferrals of at least $16,801.92 for the period December 8, 2018 through January 12, 2020; (b) interest on the unpaid contributions at an annual rate of ten percent (10%); (c) liquidated damages in the amount of twenty percent (20%) of the amount of delinquent contributions due and owing, and (d) the greater of lost earnings or restoration of profits; (3) to the NPF for: (a) estimated contributions on behalf of employees

classified as journeymen of $1,187.74 for the period November 2019; (b) estimated contributions on behalf of all groups of $3,679.48 for the period December 2019 through January 2020; (c) interest on the unpaid contributions at an annual rate of twelve percent (12%), and (d) liquidated damages in the amount of ten percent (10%) of the amount of delinquent contributions due and owing; and (4) to the ITF for: (a) estimated contributions of $18,13 on behalf of employees classified as journeymen for the period November 2019, (b) estimated contributions for all groups of $76.26 for the period December 2019 through January 2020, (c) interest on the unpaid contributions at an annual rate of twelve percent (12%), and (d) liquidated damages in the amount of twenty percent (20%) of the delinquent contributions due and owing; (5) any additional delinquent benefit contributions, interest, liquidated damages, and attorneys fees determined to be due according to the CBAs for any weeks that are unpaid as of the date judgment is entered and thereafter; and (6) to the Funds for all reasonable attorneys' fees, audit costs, and collection costs incurred by the Plaintiffs.

### THE FUNDS' FIRST CLAIM FOR RELIEF AGAINST PREMIER
*Unpaid Contributions Under 29 U.S.C. § 1145*

31. Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

32. Section 515 of ERISA, 29 U.S.C. § 1145, provides that employers "obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall…make such contributions in accordance with the terms and conditions of such plan or such agreement."

33. The CBAs requires that Premier make contributions to Plaintiffs for all Covered Work it performs within the trade and geographical jurisdiction of the Union.

34. Premier failed to submit remittance reports detailing the number of hours of Covered Work performed by employees classified as journeymen for the period November 2019 and for all groups for the period December 2019 through January 2020.

35. Accordingly, Premier owes: (1) the Local 1 Funds, (a) estimated contributions of $25,123.66 for the period November 2019 through January 2020; (2) the NPF estimated contributions of $4,867.22 for November 2019 through January 2020; and (3) the ITF contributions of $94.39 for the period November 2019 through January 2020.

36. As per the 2015-16 Audit, Premier owes the Local 1 Funds contributions in the amount of $3,543.53 for the period January 1, 2015 through December 31, 2016.

37. Similarly, Premier failed to report 401(k) Salary Deferrals to the 401(k) Savings Plan for the period December 8, 2018 through January 12, 2020, and therefore owes 401(k) Salary Deferrals for said period in the estimated amount of $16,801.92.

38. Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), provides that, upon a finding that an employer violated section 515 of ERISA, 29 U.S.C. § 1145, the plan is entitled to judgment for the amount of delinquent contributions plus interest and liquidated damages at rates prescribed by the documents and instruments governing the plan, and the reasonable attorneys' fees and costs incurred by the plan in prosecuting the action.

39. By its failure to contribute the reported and estimated contributions described *supra*, Premier contravened the CBA, the documents and instruments governing the Funds, and section 515 of ERISA, 29 U.S.C. § 1145.

40. Accordingly pursuant to the CBA, and ERISA sections 502(a)(3), 502(g)(2), and 515, 29 U.S.C.§ 1132(a)(3), (g)(2), and 29 U.S.C. § 1145, Premier is liable: (1) to the Local 1 Funds for, (a) contributions of $25,123.66 for the period November 2019 through January 2020, (b) contributions of $3,543.53 pursuant to the 2015-16 Audit, (c) interest on the unpaid

contributions at an annual rate of ten percent (10%), and (d) liquidated damages in the amount of twenty percent (20%) of the amount of delinquent contributions due and owing; (2) to the 401(k) Savings Plan (a) estimated 401(k) Salary Deferrals of $16,801.92 for the period December 8, 2018 through January 12, 2020, (c) interest thereon at the rate of ten percent (10%) per annum, (d) liquidated damages of twenty percent (20%) of the principal amount due, and (e) the greater of lost earnings or restoration of profits; (3) to the NPF for (a) estimated contributions of $4,867.22 for the period November 2019 through January 2020, (b) interest on the unpaid contributions at an annual rate of twelve percent (12%), and (c) liquidated damages in the amount of ten percent (10%) of the amount of delinquent contributions due and owing; and (4) to the ITF for (a) estimated contributions of $94.39 for the period November 2019 through January 2020, (b) interest on the unpaid contributions at an annual rate of twelve percent (12%), and (c) liquidated damages in the amount of twenty percent (20%) of the delinquent contributions due and owing; (5) any additional delinquent benefit contributions, interest, liquidated damages, and attorneys' fees determined to be due according to the CBA for any weeks that are unpaid as of the date judgment is entered and thereafter; and (6) to the Funds for all reasonable attorneys' fees, audit costs, and collection costs incurred by the Plaintiffs.

### **THE FUNDS' SECOND CLAIM FOR RELIEF AGAINST PREMIER**
*Violation of Collective Bargaining Agreement Under 29 U.S.C. § 185*

41. Plaintiffs repeat the allegations set forth in all preceding paragraphs hereof and incorporate them herein by reference.

42. Section 301 of the LMRA, 29 U.S.C.§ 185, authorizes the Union and the Funds, as third-party beneficiaries to the CBAs, to file a federal lawsuit regarding an employer's violation of the CBAs.

43. Premier violated the terms of the CBAs when it failed to make all contributions due and owing for Covered Work for the periods January 1, 2015 through December 31, 2016 and November 2019 through January 2020.

44. Premier also violated the terms of the CBA by failing to remit 401(k) Salary Deferrals for the period December 8, 2018 through January 12, 2020.

45. As a result of Premier's violations, Plaintiffs are entitled to damages and other equitable relief pursuant to section 301 of the LMRA, 29 U.S.C. § 185.

**WHEREFORE,** Plaintiffs respectfully request that this Court:

1. Render judgment in favor of Plaintiffs against Defendant Premier for:

   a. Defendant's failure to timely remit contributions required by the CBAs for the periods January 1, 2015 through December 31, 2016 and November 2019 through January 2020;

   b. Defendant's failure to timely remit 401(k) Salary Deferrals in the estimated amount of $16,801.92 that they were required to withhold from their employees' pay in connection with Covered Work performed from December 8, 2018 through January 12, 2020.

2. Order Premier to pay to Plaintiff Local 1 Funds: (1) estimated delinquent contributions of $25,123.66 for the period November 2019 through January 2020, (2) contributions of $3,543.53 for the period January 1, 2015 through December 31, 2016 pursuant to the 2015-16 Audit; (3) interest on the unpaid contributions at an annual rate of ten percent (10%); and (4) liquidated damages in the amount of twenty percent (20%) of the amount of delinquent contributions due and owing;

3. Order Premier to pay to Plaintiff NPF: (1) delinquent contributions of $4,867.22 for the period November 2019 through January 2020; (2) interest on the unpaid contributions at an

annual rate of twelve percent (12%); and (3) liquidated damages in the amount of ten percent (10%) of the amount of delinquent contributions due and owing;

4.     Order Premier to pay Plaintiff ITF: (1) estimated delinquent contributions of $94.39 for the period November 2019 through January 2020; (2) interest on the unpaid contributions at an annual rate of twelve percent (12%); and (3) liquidated damages in the amount of twenty percent (20%) of the delinquent contributions due and owing;

5.     Order Premier to pay Plaintiff 401(k) Savings Plan: (1) estimated 401(k) Salary Deferrals of $16,801.82 for the period December 8, 2018 through January 12, 2020; (2) interest thereon at the rate of ten percent (10%) per annum; (3) liquidated damages thereon of twenty percent (20%); and (4) the greater of lost earnings or restoration of profits;

6.     Order Premier to pay Plaintiffs: (1) reasonable attorneys' fees, audit costs, and collection costs incurred by the Plaintiffs in this action; (2) any additional delinquent benefit contributions, interest, liquidated damages, and attorneys' fees determined to be due according to the CBAs for any weeks that are unpaid as of the date judgment is entered and thereafter; and (3) such other legal or equitable relief as the Court deems appropriate; and

7.     Award Plaintiffs such other and further relief as the Court deems just and proper.

Dated:  New York, New York           Respectfully submitted,
        March 10, 2020
                                     **VIRGINIA & AMBINDER, LLP**


                          By:        _____/s/_____
                                     Charles R. Virginia
                                     Adrianna R. Grancio
                                     40 Broad Street, 7th Floor
                                     New York, NY 10004
                                     (212) 943-9080
                                     agrancio@vandallp.com
                                     *Attorneys for Plaintiffs*